## Grace M. Mathews, Executrix, etc., v. Henry B. Mathews, Jr., and Eliza J. Mathews.

1. CONTRACTS—*Different Instruments Executed at the Same Time.*— An agreement and note, made between a father and his son at the same time, must be regarded as constituting one entire contract where the legal effect of it is that the son agrees to pay certain specified monthly payments during the father's life, and the father on his part agrees that the note shall be canceled and the obligation satisfied at his death, if such payments shall have been made.

2. SETTLEMENT—*Unsuccessful Offers of.*—An unsuccessful offer of settlement, which is not accepted, can not be regarded as evidencing a construction of a contract different from that expressed by its terms.

Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Affirmed. Opinion filed January 30, 1900.

Statement.—This is a suit upon an alleged promissory note, payable to Henry B. Mathews, senior, now deceased, made by his son, Henry B. Mathews, junior, and the wife of the latter, who are appellees herein.

The note in controversy is the last of a series given in

renewal of the same obligation as each preceding note successively matured, which appellees claim were executed in pursuance of the following contract:

"Chicago, Ills., March 3, '90.

Received of Henry B. Mathews, Jr., two notes and a contract to run for my life.

In case of my death I have a note or contract that he is to pay me ten dollars per month for life. My son Henry B. Mathews, Jr.

Also a note of five thousand dollars. Interest payable monthly, twenty-five dollars during my life. The interest is all I expect. At my death both or any notes are paid in full. The monthly income is all I want. Same are signed by my son and wife.                H. B. Mathews."

The first note of the series, of even date with said contract, is as follows:

"$5,000.                Chicago, Ills., March 3, 1890.

For value received, we promise to pay H. B. Mathews five thousand dollars two years from date, with interest at 6 per cent, payable monthly, twenty-five dollars every month.                H. B. Mathews, Jr.
Paid March 5, '92, new note.        Eliza J. Mathews."

When this note matured according to its terms it was taken up, and there is evidence tending to show that the words "Paid March 5, '92, new note," appearing at the bottom of said note, are in the handwriting of the payee. Said note was replaced by the second note of the series, which is as follows:

"$5,000.                Chicago, March 5, 1892.

For value received, we promise to pay H. B. Mathews five thousand dollars, with interest at 6 per cent, to run two years. The interest is payable monthly, twenty-five dollars every month.
Chicago, Sept. 1, 1894,            H. B. Mathews, Jr.
    paid new note.            Eliza J. Mathews."

There is testimony tending to show that the words "Chicago, Sept. 1, 1894, paid new note," were indorsed on said note, as in the case of that preceding, in the handwriting of H. B. Mathews, Sr., the payee. The note was taken up and replaced by the third of the series as follows:

" $5,000.

One year after date, for value received, we promise to pay H. B. Mathews five thousand dollars, with interest at 6 per cent. Interest payable monthly.

CHICAGO, ILLS., Sept. 1, 1894.    Paid.

H. B. MATHEWS, JR.

ELIZA J. MATHEWS.

Paid Oct. 12, '95."

The evidence tends to show that the words " Paid Oct. 12, '95," are like the similar notations upon the previous notes in the handwriting of the payee. The date corresponds with the note now in controversy, which is as follows :

" $5,000.

Two years after date, for value received, we promise to pay to Henry B. Mathews five thousand dollars, with interest at 6 per cent, payable monthly. This means interest only.                    H. B. MATHEWS, JR.

ELIZA J. MATHEWS.

CHICAGO, ILLS., October 12, 1895."

These notes bear indorsements showing payment of the interest, and it is conceded that the installments have been regularly paid, substantially in accordance with the agreement, up to the time this suit was begun.

It appears that H. B. Mathews, senior, was at the time of the execution of the first of the four notes, and of the contract of March 3, 1890, somewhere in the neighborhood of eighty years of age. For a time he had lived with the appellee, his son; but about two years before his death he became hostile to his said son, because the latter did not approve the father's course with reference to a third person. At the time of his death, in November, 1897, the exact date does not appear in evidence, he was living with appellant, who was his daughter-in-law, the widow of a deceased son.

The present suit was instituted by the father October 13, 1897, about a month before his death.

W. W. WHEELOCK and F. M. WILLIAMS, attorneys for appellant.

MANN & MILLER, attorneys for appellees.

Mathews v. Mathews.

Mr. Justice Freeman delivered the opinion of the court.

It is the claim of appellees that the note sued on is one of a series of notes given for the same five thousand dollars, each of which is covered by, and subject to, the terms of the agreement of March 3, 1890, in the same way and to the same extent as the first note of the series of even date with said contract.

It is contended by appellant, on the contrary, that the alleged contract of March 3, 1890, was annulled by the subsequent notes, and that the latter are inconsistent and irreconcilable therewith. The argument in support of this proposition is that if said agreement of March 3, 1890, was intended to provide that appellees should only pay to H. B. Mathews, Sr., interest upon five thousand dollars during the lifetime of the latter, the first note was sufficient and there was no need of renewing it at its maturity and giving a new note at each expiration of the period named in that preceding; that the giving of each new note must be considered as a recognition of an indebtedness to be discharged by payment.

While it is doubtless true that the original note might have answered the same purpose, the new notes contain nothing to contradict the agreement of March 3, 1890, and there is nothing in the fact that the first note was taken up when, according to its terms, it had matured, to indicate any different purpose from that stated in the contract. The fact rather tends to indicate a continuing purpose to abide by the agreement of March 3, 1890. The father was an aged man. His hold upon life was uncertain. It might readily appear to both parties wiser to renew the contract by new notes from time to time, for short periods. The intention of the parties, as expressed in a written contract, can not be set aside merely because they might have accomplished the same purpose in some other way. Nor is the claim made by appellant's counsel—that an intention to rescind the agreement of March 3, 1890, is shown by giving the new notes successively—borne out by the wording of the note upon which the suit before us has been brought. After

stating the promise to pay the five thousand dollars, with interest at six per cent, payable monthly, there is added; "this means interest only." These words of themselves create a strong impression, at least, that it was the intention of the note to secure payment of "interest only," and in this the note coincides with the evident intention expressed in the agreement of March 3, 1890. Read in the light of that agreement it is scarcely possible to reach any other conclusion than that such was the intention intended to be expressed by the words quoted, an intention faithfully observed by both parties until the time when this suit was brought. This view is further sustained by receipts given in 1896 and 1897, in which occur respectively the expressions: "Ints. my life right;" "being interest on both for life;" "for life;" and one dated July 12, 1897, reads as follows: "Received of H. B. Mathews, Jr., thirty-five dollars. Twenty-five dollars interest on note of $5,000 and $10 per month as long as I live. Payable July 12, 1897. H. B. Mathews, Sr."

This receipt, given within four months of the father's death, shows, we think, conclusively, that the son was making and the father receiving payments at that time in accordance with the agreement evidenced by the original document of March 3, 1890, both as to the ten dollars per month and the monthly installments, called interest upon the five thousand dollars, then evidenced by the note now in controversy, upon which the suit at bar is brought.

It is further urged by counsel for appellant that said document of March 3, 1890, could only operate either as a testamentary devise, as a gift *inter vivos* or a gift *causa mortis*, and that it is ineffectual in all these respects.

It may be conceded that the instrument does not operate either as a testamentary devise nor as a gift. Telford v. Patton, 144 Ill. 611. It is not so claimed. If it has any force or effect it must be because, together with the note in controversy, it constitutes a valid contract between the father and son.

Counsel for appellant asserts that the said instrument of

March 3, 1890, is ambiguous, but does not point out in what respect. It certainly appears to express its meaning with sufficient clearness. It states in effect that the father holds notes upon which he expects a specified sum to be paid monthly during his life and nothing more, and that at his death all obligation under such notes will terminate.

The agreement and note made at the same time must be regarded as constituting one entire contract, the legal effect of which is that appellees having agreed to pay the specified monthly payments during the father's life, the father on his part agrees that the note should be thereby canceled and its obligation satisfied. Bailey v. Cromwell et al., 3 Scam. 71; Davis v. McVickers, 11 Ill. 327; Wilson v. Roots, 119 Ill. 379. As we have stated, we do not regard the successive renewals of the first note as impairing in any respect the force and effect of the original contract. This contract was in full force from the time when it was first made, and binding upon both parties alike.

It is said that certain oral testimony tended to show that the father subsequently made statements showing that the note was not to be considered paid until his death. We do not so understand the testimony, but in any event the plain language of the instrument can not be so interpreted. The words are : " At my death both or any notes are paid in full; " not that the notes are to be paid in full, but that at his death the notes themselves are paid by payment of monthly installments, liability for which then expires, terminating the contract. The true intention, as expressed by the instrument, seems to be that the notes were given for the sole purpose of securing payment of a sum in monthly installments, equal to what the interest would be at the rate stated upon the sum named in the note, during the lifetime of the father.

It appeared from the testimony of one of appellant's attorneys, that just prior to the father's death and before the institution of this suit, when the father entertained ill feeling toward the son, the latter offered to return the five thousand dollars, less some four hundred dollars, which he

claimed his father owed him. The son stated that he so offered "for the sake of a settlement and to make myself right with the old man." Such offer of settlement was not accepted, and under the circumstances can not be regarded as evidencing any construction of the contract different from that expressed by its terms.

It is said that appellant, as executrix, was at least entitled to recover the installment which became due October 12, 1897, during the lifetime of the father, and which was not paid, and that failure to so pay was a breach of the contract by appellees. The day after it became due this suit was begun, not for the installment of twenty-five dollars to which the father was entitled, but for five thousand dollars which he was not entitled to recover. It does not appear that there was any request or demand made for payment of this installment, and there was no refusal to pay it. In fact, the evidence of appellant's counsel, before referred to, shows that the son offered to pay this monthly installment the day it was due, and over four thousand dollars beside. Appellant's counsel refused to receive the payment, because the son would not pay all that was demanded. It is difficult to see upon what ground such refusal could charge the son with a breach of the contract, when he had offered to pay not only the installment which was due, but a large sum beside, for which he was not liable.

It may be that the estate is entitled to this installment, and had the attention of the trial court been called to the matter, the claim might have been allowed. But the point was not specifically made upon the motion for a new trial, as appears from the statement of appellant's counsel in his reply brief, and the motion as made was properly denied.

Other points are presented in the briefs of counsel, but in view of what we have said, we deem it unnecessary to consider them in detail.

The judgment of the Superior Court is affirmed.